UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HECTOR L. RESSY, | CASE NO. C11-760 MJP |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KING COUNTY and D. BENEVENTE, | |
| Defendants. | |

This matter comes before the Court on Defendants' motion for summary judgment. (Dkt. No. 30.) Having reviewed the motion, the response (Dkt. No. 39), the reply (Dkt. No. 41), and all related papers, the Court GRANTS the motion.

**Background**

Plaintiff Hector Ressy brings several claims arising out of an incident at the King County Correctional Facility on May 5, 2008. He alleges he was placed in overtightened handcuffs while being transported from a dayroom to a visitor room. He brings claims of excessive force, cruel and unusual punishment, as well as negligence and assault and battery claims. At the time of the incident, he was a pre-hearing detainee brought in on a probation violation.

1    Ressy claims officer Danny Benavente (apparently misspelled by Plaintiff as

2  "Benevente") placed him in handcuffs that were too tight while being led from a dayroom to visit

3  his attorney on May 5, 2008.  During the two minute walk, Benavente allegedly held Ressy's

4  arms, bumped him against the wall, and did not loosen his handcuffs.  Ressy claims Benavente

5  told him "so you like to file grievances?" as they walked to the visitor room.  (Ressy Decl. ¶ 1.)

6  He did not apparently complain to Benavente about the handcuffs when he was led to the

7  meeting room.  Ressy then met with his attorney for roughly twenty minutes, during which he

8  was not handcuffed.  He claims his wrists were painful and hands numb.  After the meeting he

9  was placed back in handcuffs again and led back to his cell.  Benavente states that "[a]t some

10  point prior to being returned to his cell, Mr. Ressy complained about his wrists." (Benavente

11  Decl. ¶ 8.)  Benavente states that Ressy was non-responsive to his question of whether he wanted

12  to see a nurse.  (Id.)  Another officer on duty, Pablo Chan, also states Benavente asked Ressy if

13  he wanted to have his wrists examined as they were returning to Ressy's cell.  (Chan Decl. ¶ 6.)

14  Chan, too, asked Ressy the same question, but Ressy did not respond except to say "huh." (Id.)

15    Roughly ten minutes after returning to his cell, Ressy called Chan for a medical exam.  A

16  nurse saw him about three and a half hours later on his report of a painful wrist due to tightened

17  cuffs. (Dkt. No. 36 at 5.)  The nurse found a good range of motion, no decreased movement,

18  abrasions, and no open wounds or evidence of trauma to right wrist.  (Id.)  He did, however, note

19  "[s]everal small red areas to right wrist."  (Id.)  Fifteen days later on May 20, 2008, Ressy visited

20  a nurse complaining of wrist pain and numbness.  (Dkt. No. 37.)  The nurse noted no swelling,

21  redness, or pain to the touch and Ressy was not limited in his range of movement.  (Id. at 4.)  On

22  May 30, 2008, Ressy saw another nurse complaining of chest pain.  He also stated that the

23

24

1  handcuffs placed on him prior to that specific visit hurt him. (Dkt. No. 38 at 5.) Oddly, he

2  "denie[d] any problems with his right hand prior to this visit." (Id.)

3      At his deposition, Ressy explained that during the incident on May 5, 2008, he felt

4  numbness and tingling in his wrist during the incident, but that he has not sought medical care

5  for this condition. (Ressy Dep. at 14.) He also revealed that he was involved in a separate

6  incident in September, 2011, where he claims Pierce County Sheriffs injured his right hand. (Id.

7  at 23, 24, 32.) This exacerbated the numbness and tingling in his right hand. (Id. at 32.)

8      Ressy filed a pro se complaint alleging claims of: (1) excessive force in violation of the

9  Fourth Amendment; (2) cruel and unusual punishment in violation of the Eighth, Fifth and

10 Fourteenth Amendments; (3) Monell liability for these constitutional violations against the

11 County; (4) assault and battery; and (5) negligence as to Benavente and the County. Defendants

12 move for summary judgment on all claims.

**Analysis**

13

14 A.    Standard

15     The Court "shall grant summary judgment if the movant shows that there is no genuine

16 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

17 Civ. P. 56(a). The Court views the underlying facts in the light most favorable to the party

18 opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

19 (1986). The moving party has the burden to show the absence of a genuine issue of material fact.

20 Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). Once the moving party has met its

21 initial burden, the nonmoving party must "designate specific facts showing that there is a

22 genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

23 B.    Qualified immunity

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 3

1  Benavente asserts a defense of qualified immunity to Ressy's Fourth Amendment claim.

2  The Court finds Benavente is entitled to qualified immunity.

3  The doctrine of qualified immunity protects government officials "from liability for civil

4  damages insofar as their conduct does not violate clearly established statutory or constitutional

5  rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800,

6  818 (1982).  To analyze whether the immunity attaches, the Court engages in a two step inquiry

7  in no required order.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  The Court must consider

8  whether the alleged constitutional right was clearly established at the time of the incident.

9  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The court must consider whether the facts "[t]aken in

10  the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct

11  violated a constitutional right[.]"  Id.  "Qualified immunity is applicable unless the official's

12  conduct violated a clearly established constitutional right."  Pearson, 555 U.S. at 232.

13  An initial question is whether the Fourth Amendment's protections apply to Plaintiff

14  while he was a pre-hearing detainee on a probation violation. They do.  In Pierce v. Multnomah

15  County, Or., the Ninth Circuit recognized the Supreme Court in Graham "made clear that pre-

16  trial detainees are protected by the Constitution from excessive force that amounts to

17  punishment." 76 F.3d 1032, 1042 (9th Cir. 1996).  The court in Pierce decided that the Fourth

18  Amendment protected pre-trial detainees who were arrested without a warrant and held prior to

19  arraignment.  Id. at 1043.  Here, Plaintiff was held prior to a hearing on his alleged probation

20  violation, but it is not clear whether his arrest was with or without a warrant.  Even if it was an

21  arrest with a warrant, the Court holds the Fourth Amendment's protections apply to Plaintiff's

22  claim.

23  1.  Clearly Established?

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 4

1    It is clearly established that a pretrial detainee cannot be placed in handcuffs in a manner

2 that causes an appreciable injury.

3    When identifying the right that was allegedly violated, a court must define the right more

4 narrowly than the constitutional provision guaranteeing the right, but more broadly than all of the

5 factual circumstances surrounding the alleged violation. See Watkins v. City of Oakland, Cal.,

6 145 F.3d 1087, 1092-93 (9th Cir. 1998).  The determination of whether a right is clearly

7 established must be "undertaken in light of the specific context of the case."  Saucier, 533 U.S. at

8 201.  "The contours of the right must be sufficiently clear that a reasonable official would

9 understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640

10 (1987).  To conclude that the right is clearly established, the court need not identify an identical

11 prior action. See Anderson, 483 U.S. at 640.

12    As of May 2008, the law was clearly established that an officer could violate the Fourth

13 Amendment by excessively tightening handcuffs in a manner that causes observable pain.  The

14 Ninth Circuit has held at least twice that over-tightening restraints can be the basis of a violation

15 of the Fourth Amendment's guarantee to be free from excessive force.  Palmer v. Sanderson, 9

16 F.3d 1433, 1436 (9th Cir. 1993); Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989).  While

17 these cases both dealt with arrestees, Defendants seem to concede that these cases apply to

18 pretrial detainees. The facts of those cases show the tightening must be more than usual and that

19 it often includes an officer failing to heed a request to loosen the handcuffs.  In Palmer, the court

20 held that the application of handcuffs in a manner that caused pain and bruising that lasted

21 several weeks violated the Fourth Amendment.  9 F.3d at 1436.  Notably, the arrested individual

22 complained about the cuffs and the officer did nothing to alleviate the pain in his visibly

23 discolored wrists.  Similarly, in Hansen, the court found that the application of handcuffs that left

24

1  bruises and caused pain in the fingers of an arrestee could be sufficient to prove an excessive

2  force claim.  885 F.2d at 645.  The court also noted the officer was rough and abusive to the

3  point the plaintiff received bruises to her wrist that required medical treatment, and a bystander

4  observed what appeared to be extremely rough behavior.  Id.

5      The Court finds it clearly established as of May 5, 2008, that a corrections officer can

6  violate a pre-hearing detainee's Fourth Amendment rights by over-tightening handcuffs in a

7  manner that inflicts observable pain or injury, particularly where the officer disregards the

8  detainee's complaints the cuffs are over-tightened.

9      2.      Constitutional Violation?

10      Ressy has failed to present facts supporting his claim Benavente's application of

11  handcuffs constitutes excessive force.

12      The question to resolve here is "[t]aken in the light most favorable to the party asserting

13  the injury, do the facts alleged show the officer's conduct violated a constitutional right?"

14  Saucier, 533 U.S. at 201.  Determining whether a defendant officer's use of force was

15  "reasonable" under the Fourth Amendment "requires a careful balancing of the nature and

16  quality of the intrusion on the individual's Fourth Amendment interests against the

17  countervailing government interests at stake."  Graham v. Connor, 490 U.S. 386, 396 (1989)

18  (internal quotations omitted).  "This analysis requires 'careful attention to the facts and

19  circumstances in each particular case, including the severity of the crime at issue, whether the

20  suspect poses an immediate threat to the safety of the officers or others, and whether he is

21  actively resisting arrest or attempting to evade arrest by flight.'"  Gibson v. County of Washoe,

22  Nev., 290 F.3d 1175, 1197 (9th Cir. 2002) (quoting Graham, 490 U.S. at 396).  The Court is also

23

24

1    to weigh the circumstances from the viewpoint of a reasonable officer at the scene, not using

2    20/20 hindsight.  Id.

3             The facts here do not show that an officer in Benavente's position would have known that

4    he was using excessive force.  Benavente was following normal procedures to place handcuffs

5    on Ressy to move him from the dayroom to the visitor room.  (Hyatt Decl. ¶¶ 8-9; Benavente

6    Decl.¶ 10.)  The cuffs were placed on twice, and the application was for roughly two minutes at a

7    time.  Ressy did not complain to Benavente at the time they were first placed on.  Instead, Ressy

8    states he only told Benavente to "get his hands off [him]."  (Ressy Decl. ¶ 3.)  On the return trip,

9    Benavente asked Ressy if he wanted to see a doctor about his wrist, which Ressy declined.

10   (Benavente Decl. ¶ 8.)  Ressy has presented inadequate factual evidence that the application of

11   the handcuffs caused observable or significant pain.  He testified he experienced tingling and

12   numbness in his right wrist at the time of the incident.  (Ressy Dep. at 14.)  He refused medical

13   care initially, and the nurse who saw him several hours later noted at most "several small red

14   areas to right wrist."  (Dkt. No. 36 at 5.)  He had no sensation problems with his hand, no

15   abrasions or any evidence of trauma.  (Id.)  Fifteen days later there was still no evidence of pain

16   or numbness in his right wrist.  (Dkt. No. 37 at 4.)  Contradictorily, ten days after that, Ressy

17   "denie[d] any problems with his right hand prior to visit."  (Dkt. No. 38 at 5.)  This contradictory

18   record is difficult to square with Ressy's allegations that the he felt pain in his wrist for a year

19   following the incident.  (Ressy. Decl. ¶ 4.)  These facts are not enough to sustain Ressy's claim.

20   See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001) (holding that

21   conclusory allegations unsupported by medical evaluations fail to create a dispute of fact as to

22   whether the plaintiff suffered an injury as a result of being handcuffed).

23

24

1    The Court GRANTS the motion for summary judgment on qualified immunity grounds.

2    No reasonable officer in Benavente's position would have known he was violating Ressy's

3    rights.

4    B.    Eighth Amendment

5    Ressy brings a claim for cruel and unusual punishment, which for pre-trial detainees, is a

6    form of Fifth Amendment claim.  Ressy also casts this as a claim under the Fourteenth

7    Amendment.  Ressy has failed to present any facts supporting this claim and failed to oppose the

8    opening brief on this issue, which is an admission the motion has merit.  Local Rule CR 7(b)(2).

9    "[P]retrial detainees . . . possess greater constitutional rights than prisoners."  Stone v.

10   City of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992).  A pretrial detainee's right to be

11   free from punishment is grounded in the Due Process Clause, but courts borrow from Eighth

12   Amendment jurisprudence when analyzing the rights of pre-trial detainees.  See Pierce v. County

13   of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008).  Unless there is evidence of intent to punish,

14   then those conditions or restrictions that are reasonably related to legitimate penological

15   objectives do not violate pretrial detainees' right to be free from punishment. See Block v.

16   Rutherford, 468 U.S. 576, 584 (1984) (citing Bell v. Wolfish, 441 U.S. 520, 538-39 (1979)).

17   Order and security are legitimate penological interests. See White v. Roper, 901 F.2d 1501, 1504

18   (9th Cir. 1990).

19   Ressy has not produced evidence that there was an intent to punish him by placing him in

20   handcuffs.  Ressy points to one statement that Benavente purportedly told him "so you like to

21   file grievances?"  (Ressy Decl. ¶ 40.)  Even if this was true, there is inadequate evidence that he

22   was restrained in a manner that could amount to punishment.  He was placed in handcuffs in the

23   manner proscribed by the jail facility in order to protect staff, other inmates, and visitors.  (Hyatt

24

1   Decl. ¶¶ 5-6.)   These are valid penological and security interests to support the use of handcuffs.

2   As explained above, the only evidence of any harm was the redness observed on Ressy's wrist,

3   and Ressy's subjective complaints of numbness and pain.   The contemporaneous nurse

4   observation does not seem to confirm Ressy's complaints.   Even when coupled with the claim

5   that Benevente's jibe about Ressy filing complaints, the facts cannot sustain a claim for cruel and

6   unusual punishment.

7          Ressy also appears to contend that he was subjected to cruel and unusual punishment as a

8   result of Benavente bumping him into the wall and holding his arms.   However, he has not

9   alleged that the use of force caused him any harm and has provided no evidence to support the

10  claim.   There does not appear to be objective evidence showing he was bumped to the extent that

11  it caused any harm.   Benavente admits he put his hands on Ressy's arm, but only to control him

12  as they went down the stairs.   Officer Chan observed this technique, and it was consistent with

13  King County policies.   (Chan Decl. ¶ 5; Hyatt Decl. ¶ 9.)   No facts corroborate the declaration in

14  which Ressy states he was bumped or that he was roughed up.   These facts do not show cruel and

15  unusual punishment.

16         The Court GRANTS summary judgment in favor of Benavente on the Eighth, Fifth, and

17  Fourteenth Amendment claims.

18  C.     Monell Liability Against County

19         Ressy's constitutional claims against the County require a showing that an official policy

20  or custom caused the constitutional deprivation.   Monell v. Dep't of Soc. Serv., 436 U.S. 58,

21  690-91 (1978).   Because Ressy has shown no constitutional violations, there can be no Monell

22  liability.   The Court GRANTS the motion and DISMISSES these claims.

23  D.     Assault and Battery

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 9

1   Ressy's claim for assault and battery is time-barred.  A claim for assault and battery is

2   governed by a two-year statute of limitations.  RCW 4.16.100.  Ressy alleges the incident took

3   place on May 5, 2008, but waited until May 6, 2011, to file his claim.  It is time-barred and

4   therefore DISMISSED.

5   E.      Negligence

6   Ressy inadequately alleges that Benavente negligently failed to protect him from physical

7   harm, and that the County is liable through the principle of respondeat superior.

8   "The essential elements of actionable negligence are: (1) the existence of a duty owed to

9   the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause

10  between the claimed breach and resulting injury."  Pedroza v. Bryant, 101 Wn.2d 226, 228

11  (1984).  "The causal relationship of an accident or injury to a resulting physical condition must

12  be established by medical testimony beyond speculation and conjecture."  Carlos v. Cain, 4 Wn.

13  App. 475, 477 (1971) (quotation omitted).  "It must rise to the degree of proof that the resulting

14  condition was probably caused by the accident, or that the resulting condition more likely than

15  not resulted from the accident, to establish a causal relation."  Id. (quotation omitted).

16  Ressy's complaint alleges Benevent breached a "duty to take reasonable steps to protect

17  inmates from physical harm."  (Compl. ¶ 45.)  In his response brief, he cites to the Prisoner

18  Handbook, which states he would be "provide[d] protection from abuse, corporal punishment,

19  personal injury, disease, and harassment."  (Dkt. No. 39 at 4.)

20  Ressy's negligence claim fails for lack of evidence of causation between the alleged acts

21  and his purported injury.  Ressy claims he suffers ongoing pain and numbness that arose out of

22  the incident on May 5, 2008.  The medical evidence shows that four hours after the incident there

23  was no evidence of pain, reduced motion, or lack of sensation.  (Dkt. No. 36 at 5.)  Ressy has

24

1  provided no medical evidence that would show the alleged handcuffing caused the harm about

2  which he complains.  He admits, in fact, that he never sought treatment for the condition.  There

3  is further evidence that he was later injured in an incident in 2011 that may in fact be the cause of

4  any pain he now claims.  With inadequate evidence of causation, Ressy cannot proceed on this

5  claim.  The Court GRANTS the motion on this issue and DISMISSES the claim against

6  Benavente.

7          Any claim for respondeat superior liability cannot be sustained, as it is premised on there

8  being a viable negligence claim.  The claim is thus DISMISSED as to the County, as well.

9  F.      Request for Counsel

10          In his motion, Ressy requests appointment of counsel to help with his <u>Monell</u> claim.

11  Because that claim is dismissed for lack of actionable constitutional claims, the Court DENIES

12  the request as MOOT.  It would not aid in his cause or be a reason to deny summary judgment.

**Conclusion**

14          The Court GRANTS the motion in full.  Ressy fails to present sufficient evidence of a

15  violation of his Fourth, Fifth, Eighth or Fourteenth Amendment rights.  Benavente's actions were

16  not unreasonable or excessive.  Ressy's constitutional claims fail against both Benavente and the

17  County.  His assault and battery claim is time barred, and his negligence claim lacks sufficient

18  evidence of causation to survive dismissal.  The case is DISMISSED in full.

19          The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

20          Dated this 13th day of June, 2012.

23                                          Marsha J. Pechman
                                            United States District Judge

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 11